UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BELL GEOSPACE, INC. ) | |
| ) | |
| Plaintiff, ) | No. 4:22-cv-1164 |
| ) | |
| v. ) | |
| ) | |
| XCALIBUR GEOPHYSICS SPAIN S.L. d/b/a ) | |
| XCALIBUR MULTIPHYSICS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORIGINAL COMPLAINT
FOR UNFAIR COMPETITION,
TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP,
BUSINESS DISPARAGEMENT, AND LIBEL**

For its claim against Defendant Xcalibur Geophysics Spain S.L. d/b/a Xcalibur Multiphysics ("Xcalibur"), Plaintiff Bell Geospace Inc. ("Bell Geo") hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action to enjoin and remedy: unfair competition under 15 U.S.C. § 1125, intentional interference with prospective business relationships, business disparagement, and libel.

2. This action arises out of Xcalibur's practice of spreading false and/or misleading statements about Bell Geo and its services that have resulted in lost business for Bell Geo and harm to its reputation.

**THE PARTIES**

3. Bell Geo is a Delaware Corporation, with its principal place of business at 400 N Sam Houston Parkway East, Suite 325, Houston, Texas 77060.

1229175.1

4. Upon information and belief, Xcalibur Geophysics Spain S.L. is a Spanish Company, with its principal place of business Madrid, Spain. Xcalibur Geophysics Spain S.L. holds itself out and does business as Xcalibur Multiphysics.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity jurisdiction), 1338 (unfair competition under trademark laws), and 1367 (supplemental jurisdiction).

6. This Court may properly exercise personal jurisdiction over Xcalibur since Xcalibur, upon information and belief, has an established place of business within Texas, specifically within this District at 10300 Town Park Dr, Houston, TX 77072, and maintains continuous and systematic general business contacts with Texas.

7. In particular, upon information and belief, Xcalibur owns and/or operates a website having an internet address of https://www.xcaliburmp.com (hereinafter the "Xcalibur website"). A copy of a page from the Xcalibur website is attached herewith as **Exhibit A**.

8. As shown on **Exhibit A**, the Xcalibur website lists an office in Houston, Texas for Xcalibur.

9. As further shown on **Exhibit A**, the Xcalibur website identifies at least three different employees that work out of the Houston office of Xcalibur.

10. Upon information and belief, Xcalibur recruited these employees for employment within Texas.

11. Further, upon information and belief, Xcalibur has recruited at least one former employee of Bell Geo, a Texas resident, to work out of Xcalibur's Houston office.

12. Accordingly, this Court may exercise personal jurisdiction over Xcalibur.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

1229175.1

**BACKGROUND**

14. For over 25 years, Bell Geo has been obtaining and providing Full Tensor Gradiometry (FTG) data and analysis to, for example, the oil and gas and mining industries. Using FTG, Bell Geo has acquired more than 2 million line kilometers of data, and has consistently improved the quality of data, year on year.

15. Full Tensor Gradiometry is a type of Airborne Gravity Gradiometry (AGG) which measures the rate of change of gravity, caused by subsurface geology. The measured values allow for maps to be generated by density contrasts resulting from stratigraphic and structural changes. These maps may be used for exploration for geologic targets in the area or by oil and gas and mining companies.

16. FTG data is obtained with sensitive measuring equipment and instruments located in an aircraft. The aircraft flies over target areas obtaining and gathering the necessary data.

17. Bell Geo has provided FTG related services in the United States and all around the world as well, including for example, Malaysia, Indonesia, India, Nigeria, the United Kingdom, Canada, and Mexico.

18. Since the gathering of FTG data requires use of an aircraft having the specific FTG instruments, Bell Geo plans its projects and makes arrangements so that its instruments are located in the proper location. This planning occurs months in advance and often requires consideration of weather and other environmental factors that may inhibit or prohibit the ability to fly aircraft containing the instruments over the target area to obtain the data.

19. There are currently three companies that have FTG instruments, Bell Geo, Xcalibur, and a third company, Austin Bridgeporth. Since FTG technology measures all of the independent tensor components it is referred to as a *full* tensor system.

20. Xcalibur also provides gradiometry services, however, and despite owning an FTG instrument, Xcalibur, upon information and belief, does not use its FTG instrument to provide services but uses a different AGG technology. The AGG technology used by Xcalibur measures less than a full tensor system. It is known as a *partial* tensor system because it only measures some of the tensor components and uses estimations and/or assumptions to provide the remaining tensor components of the gravity gradients.

21. Thus, despite owning an FTG instrument, Xcalibur does not utilize it for FTG services. Instead, Xcalibur provides AGG services with a Partial Tensor Gradiometry (PTG) instrument.

## THE ONGC PROJECT

22. On or about June 2, 2021, Oil and Natural Gas Corporation Ltd. "ONGC", an Indian company, invited bids for obtaining gradiometry data and performing related AGG services (the "Prospective Contract").

23. In particular, the Prospective Contract sought deliverables of "Raw and final processed all measured Tensor gravity gradients – Such as $T_{xx}$ (Eo), $T_{xy}$ (Eo), $T_{xz}$ (Eo), $T_{yy}$ (Eo), $T_{yz}$ (Eo), $T_{zz}$ (Eo)."

24. In response to ONGC's bid invitation, Bellgeo Samit Geosurvey LLP ("Bellgeo LLP") submitted a bid to provide the requested deliverables for the Prospective Contract. Bellgeo LLP is an Indian Corporation that is a joint venture between Bellgeo Enterprises Limited (a related company to Bell Geo) and Samit Enterprises PVT Ltd, an Indian company.

25. The bid of Bellgeo LLP was premised on Bell Geo providing services and deliverables, in particular, FTG survey data obtained on an airborne platform, in order to meet the requirements of the bid invitation.

26. Xcalibur, by and through its related Indian company, Xcalibur Geophysics India Private Limited ("Xcalibur Private Limited"), also submitted a bid purporting to provide the specified deliverables requested by ONGC's bid invitation. Upon information and belief, Xcalibur Private Limited is an Indian Corporation that is a joint venture between Xcalibur Aviation (Australia) Pty Ltd and Seismic Solutions LLP.

27. Despite owning an FTG instrument, upon information and belief, Xcalibur Private Limited's bid was not, however, premised on using Xcalibur's FTG instrument. Instead, upon information and belief, Xcalibur Private Limited intended to use a PTG instrument that obtains data differently from a FTG instrument. Xcalibur calls this PTG technology "Full Spectrum Falcon Technology."

28. In response to the bid of Xcalibur Private Limited, ONGC requested Xcalibur Private Limited submit additional information about its experience. Xcalibur Private Limited was given a deadline of August 30, 2021 to submit additional information.

29. On or around August 31, 2021, ONGC determined that Xcalibur Private Limited's bid did not meet one or more requirements of the bid invitation. Specifically, ONGC rejected Xcalibur Private Limited's bid because it did not timely submit sufficient documents showing experience criteria.

30. Upon information and belief, Xcalibur blamed technological glitches for its inability to upload the documents to the requisite website by the deadline.

31. On or about September 24, 2021, ONGC indicated that Xcalibur Private Limited's bid was rejected for a further reason. In particular, ONGC indicated that the bid was also rejected because, inter alia, Xcalibur Private Limited "could not provide any technical catalogues/literature to support the claim that Full Spectrum Falcon Technology will deliver the requested deliverables."

32. Since ONGC had determined that Xcalibur Private Limited's bid was disqualified, Bellgeo LLP was the only eligible bidder for the contract work. However, despite being determined to be the only eligible bidder, Bellgeo LLP was not awarded the Prospective Contract due to the illicit efforts of Xcalibur to prevent ONGC from awarding the Prospective Contract.

### XCALIBUR BEGINS TO IMPROPERLY INTERFERE WITH THE AWARD OF THE PROSPECTIVE CONTRACT

33. In response to the bid of Xcalibur Private Limited being rejected, Xcalibur began a campaign to prevent ONGC from awarding the Prospective Contract. The campaign was premised on spreading false and misleading information about Bell Geo and its services – instead of focusing on the shortcomings of the bid of Xcalibur Private Limited.

34. For example, on or about September 24, 2021, shortly after the bid of Xcalibur Private Limited was rejected and ONGC opened the eligible bids, Xcalibur sent a letter to ONGC. A copy of the September 24, 2021 letter is attached hereto as **Exhibit B**.[1]

35. The September 24, 2021 letter was only the start of a coordinated campaign by Xcalibur to stop the Prospective Contract from being entered into between Bellgeo LLP and ONGC by any means necessary including by disseminating false and misleading statements about Bell Geo and its FTG technology and claiming an anti-competitive conspiracy between Bellgeo LLP and ONGC, instead of the ineligibility of the bid of Xcalibur Private Limited.

---

[1] The September 24, 2021 letter includes one or more trademarks or logos of Xcalibur Multiphysics (**Exhibit B**, generally), includes in its header an address for the "Xcalibur website" (**Exhibit B**, pages 1-3), and includes the representation that "Earlier, rejecting *our* bid the first time around, ONGC claimed Xcalibur did not have sufficient experience. Now that *we* have established *we* do qualify on the grounds of experience…" **Exhibit B**, page 3 (emphasis added). Upon information and belief, the "experience" referred to in the September 24, 2021 letter was for services that were not performed or provided by Xcalibur Private Limited. Based on the foregoing, it is reasonable to believe that the representations and statements made in the September 24, 2021 letter were made by Xcalibur Multiphysics.

36. For example, in the September 24, 2021 letter, Xcalibur complained that ONGC did not apply the same criteria to all bidders, and that Bellgeo LLP's bid "ha[d] been shortlisted." **Exhibit B**, page 2.

37. Further, in its letter Xcalibur claimed that Bell Geo's FTG technology "does not acquire Tzz" and that the "criteria for rejection is not applied uniformly but…selectively." **Exhibit B**, page 2.

38. Finally, in the September 24, 2021 letter, Xcalibur claimed that ONGC "shifted the goal posts" by noting the different "brands" used by Bell Geo and Xcalibur and claimed that these two technologies are merely different brands for the same method. **Exhibit B**, page 3.

39. Accordingly, instead of focusing on the failures of the bid of Xcalibur Private Limited, Xcalibur's September 24, 2021 letter characterized, with false and misleading statements, the bidding process associated with the Prospective Contract as improper.

40. Xcalibur's campaign to stop Bellgeo LLP and ONGC from entering into the Prospective Contract continued with a request being filed on or about October 1, 2021 in the High Court of Delhi at New Delhi (the "First Indian Writ Request"). The purpose of the First Indian Writ Request was to stop ONGC from awarding the Prospective Contract to Bellgeo LLP.

41. In the First Indian Writ Request, Xcalibur continued to characterize the bidding process associated with the Prospective Contract as "biased" in favor of Bell Geo who, according to Xcalibur had been "shortlisted."

42. In fact, while Xcalibur, in the First Indian Writ Request, requested the court to stop the award of the Prospective Contract, it also accused Bell Geo of "apply[ing] all their sources in order to stop [Xcalibur] from the bidding process."

43. Further, Xcalibur claimed that Bell Geo has a monopoly in India and that Bell Geo was acting with "mala fide intention" to preserve and protect its monopoly position from being

1229175.1

threatened. Upon information and belief, this was done in an effort to portray Bell Geo's success as somehow ill-gained or improper.

44. Moreover, despite knowing the difference between the FTG and PTG technologies, Xcalibur also continued to falsely characterize and refer to Bell Geo's FTG technology as being the same as Xcalibur's PTG technology.

45. Indeed, Xcalibur characterized that its technology "derives the said component by a mechanism which is different from the mechanism used by" Bell Geo. However, and despite the fact that Bell Geo's FTG technology does not use a mechanism to derive any components, even after acknowledging that the two technologies are, in fact, different, Xcalibur continued to push the narrative that its technology was the same as Bell Geo's technology in an attempt to persuade the court in the First Indian Writ Request to issue an order preventing ONGC from awarding the Prospective Contract to Bellgeo LLP.

46. In response to the First Indian Writ Request, on or around October 12, 2021, ONGC was directed to consider Xcalibur's complaints and not to award the Prospective Contract to the only eligible bidder, i.e., Bellgeo LLP.

47. Accordingly, Xcalibur was thereafter granted a hearing before an independent reviewing board known as the Independent External Monitor ("IEM") before which it presented its grievances.

48. After becoming aware of the IEM hearing request by Xcalibur, Bellgeo LLP requested that it too be allowed to attend and present its positions to the IEM. However, Bellgeo LLP was not granted the opportunity to appear—let alone informed of the hearing date, time, or location.

49. Upon information and belief, on or about, November 15, 2021, Xcalibur prepared and provided a presentation to IEM in response to the bid of Xcalibur Private Limited being

1229175.1

rejected by ONGC. A copy of slides that, upon information and belief, were used and disseminated during and/or after the presentation is attached hereto as **Exhibit C**.[2]

50. The IEM presentation continued Xcalibur's narrative of blaming the rejection of the bid of Xcalibur Private Limited on everyone else and included numerous false or misleading statements about Bell Geo's FTG technology as well as about Xcalibur's own PTG technology.

51. For example, in trying to influence the IEM to rule in its favor, Xcalibur, in the IEM presentation, critiqued Bell Geo's technology and made the unfounded statement that "***FTG technology*** is now 40 years old and ***is considered obsolete***." **Exhibit C**, page 10 (emphasis added). Clearly, Xcalibur used the IEM presentation to submit false and misleading characterizations about Bell Geo and its technology.

52. Additionally, the IEM presentation claimed that "Xcalibur can provide ***the same*** or improved ***services*** and products of" Bell Geo. **Exhibit C**, page 15 (emphasis added). Accordingly, the IEM presentation was also used to provide false information about Xcalibur's own capabilities.

53. The IEM presentation also continued the false and/or misleading narrative that ONGC "shortlisted" Bell Geo and the statement that Bell Geo "has been monopolizing the market in India." **Exhibit C**, page 11.

54. Importantly, Xcalibur recognized in the IEM presentation that the deliverables required in the ONGC bid were different from previous tenders. Xcalibur claimed in the IEM

---

[2] The IEM presentation referred to the experience of "Xcalibur Multiphysics" (**Exhibit C**, page 3) and made the representation that "***Xcalibur*** confirmed to ONGC that ***we*** own an FTG system identical…" (**Exhibit C**, page 11 (emphasis added). Upon information and belief, Xcalibur Private Limited does not own an FTG system. Based on the foregoing, it is reasonable to believe that the representations and statements made in the IEM presentation were made by Xcalibur Multiphysics.

1229175.1

presentation, however, that this change was done "maliciously to favor" Bell Geo. **Exhibit C**, page 4.

55. On November 16, 2021, the day after the hearing, ONGC requested that the presentation be sent to it, and Xcalibur sent the IEM presentation to ONGC via email in response to the request. A copy of the November 16, 2021 email is attached herewith as **Exhibit D**.

56. On or about November 26, 2021, IEM determined that, in fact, despite Xcalibur's attempts to convince it otherwise, the PTG technology used by Xcalibur was not able to provide the deliverables required in the Prospective Contract and that ONGC was right to reject the bid of Xcalibur Private Limited.

57. However, as a result of the false and/or misleading statements made by Xcalibur to the IEM, the IEM also made wrong or incorrect determinations. For example, the IEM determined, albeit wrongly, that Bellgeo LLP was not a qualified bidder because, based on the false and misleading statements made by Xcalibur, its FTG technology also could not provide the deliverables required in the Prospective Contract.

58. Accordingly, due to the undue influence of Xcalibur, IEM suggested that ONGC cancel the bid process and re-invite bids in accordance with the best suited technology for the purposes of the Prospective Contract.

59. Had Xcalibur not improperly and maliciously interfered, the Prospective Contract would have been awarded to Bellgeo LLP and Bell Geo would have performed its duties under the contract. However, because of Xcalibur's improper interference, Bellgeo LLP and ONGC did not enter into the Prospective Contract.

60. Shortly after the IEM issued its determination, on or about December 1, 2021, Xcalibur filed another request with the High Court of Delhi at New Delhi (the "Second Indian Writ Request") relating to the Prospective Contract.

1229175.1

61. In the Second Indian Writ Request, Xcalibur incredulously now complained that if ONGC did not quickly to award the Prospective Contract, the time to perform the work under the Prospective Contract would expire (due to the available weather window). Accordingly, Xcalibur sought an order that ONGC be forced to open Xcalibur's ineligible bid and award the contract as quickly as possible to avoid time running out on the ability to conduct the work under the Prospective Contract.

62. Instead of awarding the Prospective Contract, ONGC withdrew its tender without entering into the Prospective Contract.

63. Recently, the High Court of Delhi at New Delhi found that the IEM decision was improper because Bell Geo was not allowed to be at the IEM hearing to correct the record and the false and misleading statements disseminated by Xcalibur.

64. However, even with the IEM decision being quashed so that it cannot be used against Bellgeo LLP in future bids, Xcalibur's campaign to prevent the award of the Prospective Contract to Bellgeo LLP succeeded because ONGC never awarded the Prospective Contract to Bellgeo LLP – the only bidder ever determined to have submitted an eligible bid.

65. As a direct result of Xcalibur's misconduct and deceptive campaign, Bell Geo has been damaged in the form of actual damages, including, but not limited to lost sales and profits.

66. Left unchecked, Bell Geo believes that Xcalibur will continue to spread false statements that will continue to result in Bell Geo losing out on work or other contracts.

## COUNT I
## UNFAIR COMPETITION
## (15 U.S.C. §1125)

67. Bell Geo repeats and alleges the allegations set forth in paragraphs 1 through 66 above, as if set forth fully herein.

68. Xcalibur has made numerous false and/or misleading statements of fact, including but not limited to:

> that "Xcalibur can provide *the same* or improved *services* and products of" Bell Geo;
>
> that Bell Geo acted improperly in the ONGC bidding process or undertook any action to interfere with the bid of Xcalibur Private Limited;
>
> that the PTG instrument used by Xcalibur could provide the deliverables specified in the Prospective Contract; and,
>
> that the FTG instrument used by Bell Geo could not provide the deliverables specified in the Prospective Contract.

69. These false and/or misleading statements of fact were made in connection with the Prospective Contract.

70. These false and/or misleading statements of fact deceived and/or were likely to deceive in a material way. In particular, as a direct result of these statements, the Prospective Contract was not awarded to Bellgeo LLP.

71. These false and/or misleading statements of fact affected commerce regulated by Congress – in particular commerce between a company in the United States and a company outside the United States.

72. As a result of the false and/or misleading statements of fact, and the Prospective Contract not being awarded to Bellgeo LLP, Bell Geo has suffered an injury including but not limited to lost profits.

73. Xcalibur's bad faith false or misleading representations of fact regarding Bell Geo's services and Xcalibur's services make this an exceptional case within the meaning of 15 U.S.C. § 1117.

1229175.1

74. Xcalibur is likely to continue to make false or misleading representations of fact regarding Bell Geo's services and Xcalibur's services unless enjoined by this Court as provided by 15 U.S.C. § 1116.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONSHIP

75. Bell Geo repeats and alleges the allegations set forth in paragraphs 1 through 74 above, as if set forth fully herein.

76. Had ONGC awarded the Prospective Contract to Bellgeo LLP, Bell Geo would have performed services under the Prospective Contract in exchange for money. Since Bellgeo LLP was the only bidder ever identified as eligible for the contract work, there was a reasonable probability that ONGC would have awarded the Prospective Contract to Bellgeo LLP.

77. In all of its experience in working in India, Bell Geo is not aware of any instance of a tender by ONGC not being awarded after evaluation of bids.

78. By submitting false and/or misleading statements of fact, Xcalibur acted to prevent ONGC from awarding the Prospective Contract to Bellgeo LLP. Xcalibur knew or should have known that it was probable that, as a result of Xcalibur's action, ONGC would not award the Prospective Contract to Bellgeo LLP.

79. Xcalibur's false and/or misleading statements of fact are independently actionable, including for example, under 15 U.S.C. § 1125(a).

80. As a direct and proximate result of Xcalibur's false and/or misleading statements of fact, ONGC did not award the Prospective Contract to Bellgeo LLP—when Bellgeo LLP was the only bidder ever determined to be eligible. This, in turn, directly and proximately caused injury to Bell Geo, including lost profits and other damages.

## COUNT III
## BUSINESS DISPARAGEMENT

81. Bell Geo repeats and alleges the allegations set forth in paragraphs 1 through 80 above, as if set forth fully herein.

82. Xcalibur has published false and/or misleading statements about Bell Geo and its services.

83. Xcalibur published these false and/or misleading statements about Bell Geo and its services in an attempt to prevent ONGC from awarding the contract to Bellgeo LLP.

84. Xcalibur had no right to make these false and/or misleading statements about Bell Geo and its services.

85. As a direct and proximate result of Xcalibur's false and/or misleading statements of fact, ONGC did not award the Prospective Contract to Bellgeo LLP—when Bellgeo LLP was the only bidder ever determined to be eligible.  This, in turn, directly and proximately caused injury to Bell Geo, including lost profits and other damages.

## COUNT IV
## LIBEL

86. Bell Geo repeats and alleges the allegations set forth in paragraphs 1 through 85 above, as if set forth fully herein.

87. Xcalibur has published various statements about Bell Geo and its services.

88. Some of the published statements about Bell Geo and its services are false.

89. Upon information and belief, Xcalibur published these false statements about Bell Geo and its services knowing the statements were false or negligently without regard as to the truth of these statements.

90. As a direct and proximate result of Xcalibur's false statements of fact, ONGC cancelled the Prospective Contract for which Bellgeo LLP was determined to be the only eligible

bidder. This, in turn, directly and proximately caused injury to Bell Geo, including lost profits and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Bell Geo prays that the Court enter an Order against Xcalibur as follows:

1. Granting injunctive relief enjoining Xcalibur and its officers, agents, employees, and all persons or entities in active concert or participation with it, from further false or misleading statements about Bell Geo and its services;

2. Awarding Bell Geo such damages as it shall prove at trial against Xcalibur that are adequate to compensate Bell Geo for its injuries, with prejudgment and post-judgment interest;

3. Finding that this case is exceptional pursuant to 15 U.S.C. § 1117 and awarding Bell Geo its attorneys fees as prevailing party;

4. Increasing the amount of damages awarded to Bell Geo to three times the amount found or assessed by this Court because of the willful and deliberate nature of Xcalibur's acts pursuant to 15 U.S.C. § 1117;

5. Awarding Bell Geo its costs in bringing this action; and

6. Awarding Bell Geo any further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Bell Geo hereby demands a trial by jury of all issues so triable.

Dated this 11th day of April, 2022.

                          Respectfully submitted,

                          */s/ Patrick J. Smith*
                          Patrick J. Smith
                          IL Bar No. 6284418
                          **GREER BURNS & CRAIN**
                          300 S. Wacker, Suite 2500
                          Chicago, IL 60606
                          312 - 987 - 2927 / psmith@gbc.law
                          Pro Hac Vice Admission Pending

                              -   *And*   -

                          **SCOTTHULSE, P.C.**
                          One San Jacinto Plaza
                          201 E. Main Drive
                          El Paso, Texas  79901
                          (915) 533-2493
                          (915) 546-8333 Telecopier

By:  */s/ James M. Feuille*
       **JAMES M. FEUILLE**
       State Bar No. 24082989
       jfeu@scotthulse.com

*Counsel for Plaintiff Bell Geospace*

1229175.1