United States District Court
Southern District of Texas
**ENTERED**
January 03, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Bell Geospace, Inc., | § § § | |
| *Plaintiff,* | § § § | Case No. 4:22-cv-01164 |
| v. | § § | |
| Xcalibur Geophysics Spain S.L. d/b/a Xcalibur Multiphysics, | § § § § | |
| *Defendant.* | § § § | |

# MEMORANDUM AND RECOMMENDATION

Defendant Xcalibur Geophysics Spain S.L. d/b/a Xcalibur Multiphysics ("Xcalibur Multiphysics") filed a motion to dismiss this suit under Fed. R. Civ. P. 12(b)(2) and, alternatively, to dismiss for forum non conveniens, which was referred to the undersigned judge. Dkt 8; Dkt. 16. After carefully considering the motion, the response filed by Plaintiff Bell Geospace, Inc. ("Bell Geo"), the evidence submitted by the parties, and the applicable law, it is recommended that Xcalibur Multiphysics' motion be granted.

## Background

This suit involves competitors who provide data and analysis for the oil and mining industries. Because the factual allegations have limited relevance to the pending motion, they are summarized only briefly here.

The dispute began when a company in India, Oil and Natural Gas Corporation Ltd. ("ONGC"), solicited bids for obtaining gradiometry data and related services that measure the rate of change of gravity caused by subsurface geology. Dkt. 1 ¶¶ 15, 22. Bellgeo Samit Geosurvey LLP ("Bellgeo LLP") submitted a bid through which Bell Geo would provide related services and deliverables. *Id.* ¶¶ 24-25. Xcalibur Multiphysics submitted a competing bid for the contract, allegedly through an Indian subsidiary—Xcalibur Geophysics India Private Limited ("Xcalibur Private Limited). *Id.* ¶ 26.

ONGC rejected Xcalibur Private Limited's bid for various stated reasons, leaving Bellgeo LLP as the only eligible bidder for the contract. *Id.* ¶¶ 29-32. Unhappy with this result, Xcalibur Multiphysics allegedly began spreading false and misleading information about Bell Geo and its services, to prevent ONGC from awarding the contract to Bellgeo LLP. *Id.* ¶¶ 33-66. As Bell Geo contends, this unlawful campaign began with a September 24, 2021 letter that Xcalibur Multiphysics sent to ONGC, complaining about the bid process, criticizing Bell Geo's technology, and demanding that ONGC halt its contracting process. *Id.* ¶¶ 34-40; Dkt. 1-2, Ex. B.

Xcalibur Multiphysics also sought relief in the High Court of Delhi at New Delhi, which led to hearing before an Independent External Monitor ("IEM"). *Id.* ¶¶ 40-47. Bell Geo was denied an opportunity to participate in that hearing, where Xcalibur Multiphysics purportedly made numerous false

2

or misleading characterizations about Bell Geo and its technology and contended that Bell Geo had been monopolizing the market in India. *Id.* ¶¶ 48-54; Dkt. 1-3, Ex. C; Dkt. 1-4, Ex. D.

In its decision, the IEM found that ONGC was right to reject Xcalibur Multiphysics' bid. *Id.* ¶ 56. But the IEM also determined that Bellgeo LLP was not a qualified bidder, purportedly based on Xcalibur Multiphysics' mischaracterizations of Bell Geo's technology. *Id.* ¶ 57.

Although the High Court of New Delhi later found that Bell Geo's exclusion from the hearing rendered the IEM decision improper, Bell Geo maintains that the damage was done: ONGC had already withdrawn its tender and decided against entering into the prospective contract. *Id.* ¶¶ 59, 62-66.

Bell Geo then filed this suit, asserting an unfair competition claim under the Lanham Act, 15 U.S.C. § 1125, and state-law claims for tortious interference with prospective business relationship, business disparagement, and libel. *Id.* ¶¶ 67-90. Xcalibur Multiphysics filed a motion to dismiss for lack of personal jurisdiction, Dkt. 8, to which Bell Geo responded, Dkt. 12.

## Legal Standard

Under Rule 12(b)(2), a court must dismiss a claim if it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When, as here, jurisdiction is founded "upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-

state defendant, [Rule 4] requires that the state's standard of amenability to jurisdiction apply." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983) (addressing former Fed. R. Civ. P. 4(e)); *see Staktek Grp. L.P. v. Kentron Techs., Inc.*, 2007 WL 9702380, at *1 (W.D. Tex. Mar. 7, 2007) (concluding the Lanham Act, governing unfair-competition claim, "is silent as to service of process," thus triggering state long-arm statute). The long-arm statute of the forum state, Texas, "reach[es] as far as the federal Constitution permits." *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).

In such a case, personal jurisdiction over a defendant must comport with due process. *See Bulkley & Assocs., L.L.C. v. Dep't of Indus. Relations*, 1 F.4th 346, 351 (5th Cir. 2021) ("[T]he two-step inquiry of assessing the long-arm statute and due process collapses into one federal due process analysis.") (internal quotation marks omitted). The ultimate question is whether the defendant "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," such that "the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

4

When, as here, the court resolves a Rule 12(b)(2) motion without an evidentiary hearing, the party invoking jurisdiction bears the burden to make a prima facie case that personal jurisdiction is proper. *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The court "must accept the plaintiff's 'uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

## Analysis

The parties' debate over personal jurisdiction relies on several faulty premises, detailed below. Regardless, binding case law confirms that Bell Geo has not met its prima facie burden to show that personal jurisdiction over Xcalibur Multiphysics is proper. For that reason alone, dismissal is warranted under Rule 12(b)(2). It is therefore unnecessary to reach Xcalibur Multiphysics' alternative request to dismiss on forum non conveniens grounds. *See* Dkt. 8 at 16-23.

### I. The complaint alleges specific wrongdoing by Xcalibur Multiphysics, not its subsidiary.

For its part, Xcalibur Multiphysics maintains that the factual allegations concern solely the acts and omissions of its subsidiary in India, Xcalibur Private Limited, the entity that unsuccessfully bid on the contract

with ONGC and is the only proper party to this suit. Dkt. 8 at 3-7. From that premise, Xcalibur Multiphysics argues that Bell Geo cannot demonstrate personal jurisdiction over either Xcalibur Private Limited, whose activities occurred wholly outside the United States, or Xcalibur Multiphysics, to whom the actions of Xcalibur Private Limited cannot be imputed. *Id.* at 7-13.

The complaint, however, is replete with allegations that Xcalibur Multiphysics—not its Indian subsidiary—committed the wrongdoing that gave rise to Bell Geo's claims. As Bell Geo notes, the complaint defines and identifies Xcalibur Multiphysics as "Xcalibur." Dkt. 1 at 1. By contrast, Xcalibur Multiphysics' Indian subsidiary is referenced as "Xcalibur Private Limited." *Id.* ¶ 26. And the core allegations target conduct of "Xcalibur"—*i.e.*, Xcalibur Multiphysics—and not its subsidiary Xcalibur Private Limited. *See id.* ¶¶ 33-66. According to the complaint, it was Xcalibur Multiphysics that allegedly mounted a "campaign to prevent ONGC from awarding the Prospective Contract" to Bell Geo, including by sending a September 24, 2021 letter—on "Xcalibur Multiphysics" letterhead—complaining that the bid process was mishandled and requesting that ONGC be stopped from proceeding. *See id.* at 33-34; Dkt. 1-2, Ex. B. Given these explicit allegations, Xcalibur Multiphysics cannot rewrite the complaint by claiming, through its motion, that the "real" wrongdoer is Xcalibur Private Limited.

6

## II. Bell Geo did not meet its prima facie burden to show that personal jurisdiction exists over Xcalibur Multiphysics.

Nonetheless, Xcalibur Multiphysics further contends that its own contacts with the forum state, even if relevant, are insufficient to support any theory of personal jurisdiction. *See* Dkt. 8 at 13-14. Those alternative theories are specific jurisdiction and general jurisdiction.

Specific jurisdiction hinges on the relationship between the claims and the defendant's contacts with the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). To establish specific personal jurisdiction, the suit "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (cleaned up). But here, Bell Geo conspicuously fails to argue or demonstrate that its claims arise out of or relate to Xcalibur Multiphysics' contacts with Texas. *See* Dkt. 12. Bell Geo has therefore waived reliance on specific personal jurisdiction. *See Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 235, 242 & n.29 (5th Cir. 2022) (en banc) (plaintiffs waived reliance on specific personal jurisdiction by failing to raise the issue before the district court).

Instead, Bell Geo insists that this Court has general personal jurisdiction over Xcalibur Multiphysics. Dkt. 12 at 5-11. If true, then this Court would be authorized "to hear *any* claim against [Xcalibur Multiphysics], even if all the incidents underlying the claim occurred" outside of Texas. *See*

7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Bell Geo bases its theory on Xcalibur Multiphysics' website listing a location in Houston, Dkt. 12-6, Ex. E, the company's LinkedIn page indicating that twelve of its 114 employees work in a Houston office, Dkt. 12-5, Ex. D, and other LinkedIn pages indicating that certain individuals—including one of Xcalibur Multiphysics' affiants—identify themselves as working for Xcalibur Multiphysics in Houston, Dkt. 12-1, Ex. A (listing Sean McBee as "Deputy Managing Director at Xcalibur Multiphysics" in "Houston, TX"); Dkt. 12-4, Ex. C (listing Tom Nelson as "Marine Operations Manager at Xcalibur Multiphysics" in Houston).

Xcalibur Multiphysics, in turn, disputes the assumption that it maintained an office in Texas. *See* Dkt. 8 at 13-14. Xcalibur Multiphysics proffers competing evidence indicating that the Houston office is operated by a different entity, Xcalibur MPH (U.S.) Inc., and conducts no business for Xcalibur Multiphysics. *Id.* (citing Dkt. 8-3, Ex. C, Decl. of Sean McBee ¶ 2).

But the parties' debate over who owns and controls the Houston office misses the point. Neither party acknowledges a significant and recent line of authority reflecting that general jurisdiction would not be proper, on this record, even if Xcalibur Multiphysics maintains an office in the forum state.

8

### A. Recent Supreme Court decisions have curtailed the scope of general personal jurisdiction.

In *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), the Supreme Court emphasized that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." For corporate defendants,[1] merely "engag[ing] in a substantial, continuous, and systematic course of business" in the forum state is not enough. *Id.* at 138 (rejecting this standard as "unacceptably grasping"). In *Daimler*'s words, the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 138-39.

*Daimler* prescribed the "paradigm" basis for general jurisdiction as the entity's place of incorporation and the location of its principal place of business. *Id.* Citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the Court left open the possibility of an "exceptional case" where a corporation's

---

[1] It is unclear whether Xcalibur Multiphysics, a Spanish "S.L.," is properly characterized as a corporation. That question is not material to the analysis because "[c]ourts routinely refer to the *Daimler* test and use the term 'corporation' when discussing general jurisdiction for both incorporated and non-incorporated business entities." *Garcia Hamilton & Assocs., L.P. v. RBC Capital Mkts., LLC*, 466 F. Supp. 3d 692, n.5 (S.D. Tex. June 10, 2020) (collecting authorities). Indeed, the Supreme Court clarified that *Daimler* "applies to all state-court assertions of general jurisdiction over nonresident defendants" regardless of "the type of claim asserted or business enterprise sued." *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017).

9

operations elsewhere might be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. As described in *Daimler*, the *Perkins* case involved an unusual situation where a Philippine mining company ceased operations during World War II, and its president moved to Ohio, opened an office there, kept the company's files there, and oversaw the company's activities from that location—meaning that "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 571 U.S. at 129 (discussing *Perkins*, 342 U.S. at 437, 448, and quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984)). But the Court found no such exceptional case in *Daimler*, even if the extensive actions of the defendant's subsidiary in the forum state (California) were imputed to the defendant. *Id.* at 123, 139 (reaching this conclusion even though the subsidiary had several California-based facilities and defendant itself was the largest supplier of luxury vehicles to California, deriving 2.4% of its worldwide sales from sales in California).

The Court's subsequent decision in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017), reinforces the narrowness of general jurisdiction. Acknowledging again that exceptional cases could justify extending general jurisdiction beyond a corporation's place of incorporation and principal place of business, the Court nevertheless concluded that the BNSF's activities did not present a *Perkins*-type exceptional case. *Id.* As the Court explained, although

BNSF maintained over 2,000 miles of railroad tracks and more than 2,000 employees in Montana, the inquiry must look beyond "the magnitude of the defendant's in-state contacts." *Id.* (quoting *Daimler*, 571 U.S. at 139 n.20). BNSF's business in the Montana was not enough—in the context of its activities everywhere—to make BNSF essentially at home in Montana. *Id.*

### B. Bell Geo presented no evidence that Xcalibur Multiphysics, a Spanish company based in Spain, is "at home" in Texas.

Neither Xcalibur Multiphysics nor Bell Geo mentions *Daimler* or *BNSF*. Yet these authorities are dispositive.

At best, Bell Geo has shown that Xcalibur Multiphysics has an office in Houston and employs twelve employees here. Before *Daimler*, that might have amounted to continuous and systematic contacts that could show general jurisdiction. Not so anymore, given that *Daimler* demands that a defendant's "affiliations with the State [be] *so* 'continuous and systematic' as to render [it] essentially *at home* in the forum State." 571 U.S. at 138-39 (emphasis added); *see also, e.g.*, *Garcia Hamilton & Assocs., L.P. v. RBC Capital Mkts., LLC*, 466 F. Supp. 3d 692, 700 (S.D. Tex. 2020) (no general jurisdiction, under *Daimler*, over an entity with four Texas offices that, together, employed almost 250 employees and conducted hundreds of business transactions in Texas); *Aziz v. MMR Grp., Inc.*, 2018 WL 3439637, at *4 (S.D. Tex. July 17, 2018) (defendant's ownership of facilities, employment of workers, and continuous operation in

11

forum was insufficient for general jurisdiction under *BNSF*, when defendants were incorporated in and operated principally in a different state).

The few forum-based contacts shown of Xcalibur Multiphysics pale in comparison to those deemed insufficient in *Daimler* and *BNSF*, not to mention the "lodestar" for an exceptional case in *Perkins*. *See Douglass*, 46 F.4th at 242 (characterizing *Perkins*). As Bell Geo admits, Xcalibur Multiphysics is a Spanish company incorporated in Spain with its principal place of business in Madrid, Spain. Dkt. 1 ¶ 4. Thus, Texas is hardly a "paradigm forum" for exercising general jurisdiction over Xcalibur Multiphysics. *See BNSF Ry.*, 137 S. Ct. at 1558. Bell Geo's own exhibits reflect that the twelve employees in Xcalibur Multiphysics' Houston office comprise less than 11% of its total workforce around the world. Dkt. 12-5, Ex. D (LinkedIn page). The same document identifies four global offices in which Xcalibur Multiphysics has far more employees than it purportedly maintains in Houston——Canada (24), South Africa (23), Australia (22), and Spain (20). *Id.*

Nothing suggests that the forum state is "the center of [Xcalibur Multiphysics'] activities" or a "surrogate for [Xcalibur Multiphysics'] place of incorporation or head office." *Daimler*, 571 U.S. at 130 n.8. Yet the inquiry demands "appraisal of a [Xcalibur Multiphysics'] activities in their entirety," given that it "operates in many places can scarcely be deemed at home in all of them." *BNSF Ry.*, 137 S. Ct. at 1559 (quoting *Daimler*, 571 U.S. at 140 n.20);

12

*see also Douglass*, 46 F.4th at 242-43 (no general jurisdiction despite NYK's operation of "twenty-seven shipping terminals and six air-cargo terminals in the United States," where "NYK's contacts with the United States comprise only a minor portion of its worldwide contacts"); *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 397 (E.D. Tex. Jan. 28, 2022) (concluding "that one office, employees, and a general business presence in Texas" were not "substantial enough" connections "to render NBCU at home here").

Bell Geo offers no evidence addressing the extent to which Xcalibur Multiphysics' Texas-based operations factor into its overall business, despite the company's worldwide reach. This evidentiary gap must be construed against Bell Geo, who bears the burden to show that jurisdiction is proper. *See Garcia Hamilton & Assocs, L.P.*, 466 F. Supp. 3d at 700-01 (similar failure to present evidence permitting a "qualitative analysis" under *Daimler* defeated general jurisdiction).

In sum, the Court agrees with Xcalibur Multiphysics—albeit under more recent, Supreme Court authority—that its few alleged contacts with Texas, even if accepted as true, fall well short of justifying general personal jurisdiction. And again, that is the only theory Bell Geo has advanced. The proper course is to dismiss this case without prejudice under Rule 12(b)(2). *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) (dismissal for

lack of personal jurisdiction "is not a judgment on the merits" and must be without prejudice).

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Xcalibur Geophysics Spain S.L. d/b/a Xcalibur Multiphysics' 12(b)(2) motion to dismiss for lack of personal jurisdiction (Dkt. 8) be **GRANTED**, and that this case be **DISMISSED WITHOUT PREJUDICE**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on January 3, 2023, in Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge